

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
~~AT HUNTINGTON~~
*CHARLESTON*

**FILED**

MAY - 3 2006

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

STEVEN J. MOSES

      Plaintiff,

v.

CIVIL ACTION NO. 2:06-0321

NORFOLK SOUTHERN RAILWAY COMPANY,

      Defendant.

## DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S
### NOTICE OF REMOVAL

The Defendant, Norfolk Southern Railway Company ("NSRC"), pursuant to the provisions of 28 U.S.C. §1446, hereby gives notice of the removal of the case styled as "Steven J. Moses v. Norfolk Southern Railway Company," Civil Action No. 06-C-43, pending in the Circuit Court of Mingo County, West Virginia to this Court. As grounds for the removal, NSRC states as follows:

    1.    The Plaintiff instituted this civil action in the Circuit Court of Mingo County, West Virginia, against the Defendants on or about March 30, 2006.

    2.    Service of the Summons and First Amended Complaint[1] ("Complaint") in this matter was made upon the West Virginia Secretary of State on behalf of NSRC on April 3, 2006. The Summons and Complaint were forwarded to NSRC's registered agent for service of process on April 5, 2006. A copy of the Summons and Complaint are attached hereto as Exhibit A.

---

[1] NSRC was never served with an original Complaint.

{ll0204052.1 }

Other than the Summons and Complaint, no other pleadings, process or orders have been served upon NSRC in this action.

      3.     NSRC is currently required to answer or otherwise plead in response to Plaintiff's Complaint on or before May 3, 2006. This Notice of Removal, filed on May 3, 2006, is therefore timely under 28 U.S.C. § 1446(a) as it is filed within thirty days after receipt by NSRC of a copy of the Complaint. As the result of this Removal, NSRC is now required to Answer or otherwise plead in response to Plaintiff's Complaint on or before May 10, 2006, pursuant to Rules 81(c) and 6(a) of the Federal Rules of Civil Procedure.

      4.     In his Complaint, the Plaintiff asserts two causes of action against NSRC based upon the same operative facts: Count I for an "on-the-job" injury under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.*, and Count II for retaliatory discharge.

      5.     Count II of Plaintiff's Complaint involves the allegation that he was discharged by NSRC for raising safety concerns or making safety complaints by reporting his on-the-job injury. Specifically, Plaintiff alleges that "he was instructed by his supervisors that if he reported this incident, he would be fired," and that his "termination was in retaliation for reporting the incident and the unsafe working conditions in which he was made to work." In other words, Plaintiff plainly alleges that he was terminated in retaliation for reporting unsafe working conditions.

      6.     Both this Court and the Fourth Circuit Court of Appeals have expressly recognized that claims such as the allegations contained in Count II of the Plaintiff's Complaint are preempted by the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq. See Rayner v. Smirl*, 687 F.Supp. 997 (D.Md. 1988), aff'd, 873 F.2d 60 (4th Cir. 1989); *Johnson v.*

*CSX Transportation, Inc.*, Civil Action No. 2:97-0895 (S.D.W.Va. 1998).[2]  Specifically, § 20109 of the FRSA, which protects railroad employees from harassment, discrimination, or discharge by their employer for reporting safety violations or making safety complaints of any type, is Plaintiff's exclusive remedy for NSRC's conduct as alleged in Count II of Plaintiff's Complaint. *See Rayner*, 873 F.2d at 64-65.

7.      In *Rayner*, the Fourth Circuit Court of Appeals held that the FRSA, and specifically 49 U.S.C. § 20109 , "completely preempt[s]" all remedies, other than those specified in § 20109, for conduct such as that alleged in Count II of the Plaintiff's Complaint. *See Rayner*, 687 F.Supp. at 996-97; 873 F.2d at 63, 67.  Similarly, in *Johnson*, Judge Copenhaver of this Court specifically held that § 20109 of the FRSA preempts claims based upon retaliatory conduct against a railroad employee for making safety related complaints.  Applying the "well-pleaded Complaint" rule to Plaintiff's allegations that he had been retaliated against by his railroad employer for making complaints and reports about safety, Judge Copenhaver held that § 20109 of the FRSA "completely preempted" Plaintiff's claim and fully supported both the removal of the case to federal court and the dismissal of Plaintiff's claim as preempted by § 20109.

8.      In the present case, Count II of the Plaintiff's Complaint is preempted by § 20109 of the FRSA and is therefore "completely preempted" by federal law.  As such, any claim purportedly based on preempted law is considered, from its inception, to be a federal claim, and therefore arises under federal law. *Rayner*, 873 F.2d at 63.  Consequently, Plaintiff's retaliatory discharge claim arises under the laws of the United States for purposes of 28 U.S.C. § 1331 and 28 U.S.C. § 1441(b) and (c).

9.      Based upon the preceding grounds, this action is properly removable to this Court pursuant to the provisions of 28 U.S.C. § 1331, 28 U.S.C. § 1441(b), and 28 U.S.C. § 1441(c).

---

[2]  A copy of this Court's Memorandum Order and Judgment Order in *Johnson* are attached hereto as Exhibit B.

As such, this Court has supplemental jurisdiction over the remaining claims contained in Plaintiff's Complaint pursuant to 28 U.S.C. §1367.

WHEREFORE, Defendant Norfolk Southern Railway Company submits this Notice of Removal to the Court herein and hereby gives notice to the Clerk of the Circuit Court of Mingo County, West Virginia, that said Removal is hereby effected and that no further action by the Circuit Court shall take place unless this Court remands this action.

**NORFOLK SOUTHERN RAILWAY COMPANY**

By _____
                     Of Counsel


J.H. Mahaney, Esquire
(W.Va. #6993)
Charles F. Bellomy, Esquire
(W.Va. #9117)
**HUDDLESTON BOLEN LLP**
Post Office Box 2185
Huntington, WV 25722-2185
(304) 529-6181
Counsel for Defendant,
        Norfolk Southern Railway Company

# EXHIBIT A

{ 1R0004441.1 }

## SUMMONS

### IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

CIVIL ACTION NO. 06-C-43

**STEVEN J. MOSES**  )
 )
_____  )
 )
_____Plaintiff  )
 )
v.  )
 )
**NORFOLK SOUTHERN RAILWAY**  )
 )
**COMPANY**, a foreign corporation,  )
 )
_____Defendant  )

*[stamp: NS LAW DEPARTMENT APR 0 6 2006 NORFOLK]*

Summons     Received via Fed Ex
to Roger A. Petersen
*Roger A. Petersen*
4-10-06

**SERVE SECRETARY OF STATE**

**To the above-named Defendant:**   **NORFOLK SOUTHERN RAILWAY COMPANY**
**c/o Fred Adkins**
**611 Third Avenue**
**Huntington, WV 25701**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Rudolph L. DiTrapano, Joshua I. Barrett, Sean P. McGinley and Heather M. Langeland, of Di Trapano, Barrett & DiPiero, plaintiff's counsel, whose address is 604 Virginia Street, East, Charleston, West Virginia 25301, an answer, including any related counterclaim you may have, to the first amended complaint filed against you in the above styled civil action, a true copy of which is hereby delivered to you. You are required to serve your answer within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the first amended complaint and you will be thereafter barred for asserting in another action any claim you may have which must be asserted by counterclaim in the above styled civil action.

Dated: 3/30/06

_____
Grant Reece
Clerk of Court

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

**STEVEN J. MOSES,**
      Plaintiff,

      v.

**NORFOLK SOUTHERN RAILWAY COMPANY,**
a foreign corporation,
      Defendant.

Civil Action No.: 06-C-43

Judge:_____

## FIRST AMENDED COMPLAINT

The Plaintiff, STEVEN J. MOSES (the "Plaintiff") by and through his undersigned attorneys brings this action against the Defendant Norfolk Southern Railway Company, a foreign corporation ("Norfolk Southern") upon information and belief and states for his Complaint as follows:

### I. INTRODUCTION

1.    This is a civil action arising under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., as amended.

2.    This is an action for damages which exceed the minimum jurisdictional limits of this Court, exclusive of costs and interest, and is within the jurisdiction of this Court.

### II. PARTIES

3.    The Plaintiff is a citizen and resident of Rocky Gap, Virginia. His address is P.O. Box 6, Rocky Gap, Virginia, 24366.

4.    At all times material hereto, Norfolk Southern was and is a Virginia Corporation actively conducting ongoing and substantial business as a common carrier by rail within the State of West Virginia, maintaining facilities in Bluefield, West Virginia.

Complaint

Received via Fed Ex
to Roger A. Petersen



Page 1 of 6

5.      At the time of the commencement of this action, Norfolk Southern received, accepted and transported various shipments of freight in and through Mingo County, West Virginia, both in intrastate and interstate commerce, and maintained offices for the transaction of its business in said county and state and at the time hereinafter mentioned was and now is doing business in said county and state within the true meaning and intent of Section 6 of the Federal Employers' Liability Act, as amended.

6.      At all times material hereto, Plaintiff was an employee of Norfolk Southern, and, at all times and places described herein, was working within the course and scope of his employment and was working in the furtherance of interstate commerce and in work which directly, closely and substantially affected the interstate commerce carried on by Norfolk Southern.

### III. FACTS

7.      Plaintiff realleges and incorporates paragraphs 1-6 of this Complaint as if they were set forth in their entirety herein.

8.      On or about January 25, 2004, Plaintiff was employed by Defendant as a yardmaster assigned to Defendant's facilities in Bluefield, West Virginia, known as Bluefield Yard.

9.      On the aforesaid date while in the usual and ordinary scope and course of his duties as a yardmaster, Plaintiff was entering Defendant's facilities known as the Bluefield Yard office at a time when the walkway leading into the yard office was covered with snow. Unbeknownst to Plaintiff, a layer of ice was beneath the snow which caused Plaintiff to slip and fall injuring his knees.

### IV. COUNT I

10.    Plaintiff realleges and incorporates paragraphs 1-9 of this Complaint as if they were set forth in their entirety herein.

11.    Defendant, its officers, agents and./or employees were guilty of one or more of the following negligent acts and/or negligent omissions which caused or contributed to cause the Plaintiff's injuries and damages as hereinafter alleged:

 i. In negligently failing to use reasonable care to provide Plaintiff with a safe to work; and/or

 ii. In negligently allowing snow and ice to remain on its property leading into the Bluefield Yard office thereby creating a walking hazard to its employees, including Plaintiff; and/or

 iii. In negligently failing to maintain its walkways in a clean, proper and safe condition so as to prevent its employees, including Plaintiff, from falling.

12.    The foregoing snow and ice were present on the walkways and the parking lot leading into the Bluefield Yard office for a sufficient length of time to have allowed Defendant to remove the snow and ice which caused the Plaintiff's injuries to his knees.

13.    As a direct and proximate result of the above negligent actions or omissions of Defendant, Plaintiff sustained personal injuries, including injuries to his knees and/or aggravation of a previously existing condition.  These injuries are permanent so as to cause the Plaintiff pain, disability and will continue for some time in the future.

14.    As a further result of these injuries, Plaintiff has been compelled to seek medical attention, including surgery, and to incur medical expenses for the treatment of his injuries and for travel necessary to secure medical treatment and in the future will be

compelled to incur expenses for medical care and travel, and seeks damages herein for such un-reimbursed expenses.

15.     As further result of the injuries sustained, Plaintiff was caused to lose and will in the future be caused to lose income, which he would otherwise have earned, and further Plaintiff has suffered and will into the future suffer a loss of future earnings and fringe benefits and future earning capacity.

16.     As a further result of the injuries sustained, the Plaintiff was caused to suffer and will in the future suffer physical pain, suffering and permanent disability.

## V. COUNT II

17.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 16 above, the same as if fully recited herein.

18.     At the time of Plaintiff's injuries, he was instructed by his supervisors that if he reported this incident, he would be fired.

19.     For fear of losing his job, Plaintiff did not report this injury until it became necessary for him to undergo surgery in October of 2005.

20.     When the Plaintiff did report this injury, he was again threatened with losing his job.

21.     When the Plaintiff reported this injury, he was instructed by the Defendant's agents to falsify information on the report.

22.     The actions of the Defendant through its agents was calculated to intimidate the Plaintiff into remaining silent regarding his injury.

23.     Subsequent to reporting this injury, the Plaintiff was fired by the Defendant on or about January 3, 2006.

Complaint

24.    This termination was in retaliation for reporting the incident and the unsafe working conditions in which he was made to work.

25.    Defendant's conduct in terminating the Plaintiff was intended to harass, intimidate, and otherwise cause the Plaintiff to suffer emotional distress.

26.    As a result of this retaliatory discharge, the Plaintiff has suffered damages for emotional distress.

## JURY TRIAL DEMANDED

27.    Plaintiff demands a trial by jury to the extent permitted by law.

## RELIEF REQUESTED

WHEREFORE, STEVEN J. MOSES, demands judgment against the Defendant Norfolk Southern Railway Company in an amount in excess of the minimum jurisdictional limits of this Court, together with interests and the costs of this action, and for all other proper relief to which he may appear entitled.

This 2nd day of February, 2006.

**STEVEN J. MOSES, Plaintiff**
**By Counsel**

*Heather M. Langeland*

Rudolph L. DiTrapano, Esquire (Bar No. 1042)
Joshua I. Barrett, Esquire (Bar No. 252)
Sean P. McGinley, Esquire (Bar No. 5836)
Heather M. Langeland, Esquire (Bar No. 9938)
**DITRAPANO, BARRETT & DIPIERO, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
Telephone: 304-342-0133
Facsimile: 304-342-4605

-and-

Complaint                                                                                    Page 5 of 6

Alva A. Hollon, Jr., Esquire
John O. Hollon, Esquire
**SAMS & HOLLON, P.A.**
9424 Baymeadows Road, Suite 160
Jacksonville, Florida 32256
Telephone: (904)737-1995
Facsimile: (904)737-3838

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ENTERED

NOV 1 8 1993

SAMUEL L. KAY, CLERK
U. S. District & Bankruptcy Courts
Southern District of West Virginia

CALVIN T. JOHNSON,

       Plaintiff

v.                            Civil Action No. 2:97-0895

CSX TRANSPORTATION, INC., a foreign
corporation; THOMAS PRESTON CRAWFORD,
individually; and THOMAS M. McQUAIN,
individually,

       Defendants

JUDGMENT ORDER

In accordance with the memorandum order this day
entered in the above-styled civil action, it is ORDERED and
ADJUDGED that Counts I, II, and IV of plaintiff's amended
complaint be, and they hereby are, dismissed with prejudice and
that judgment thereon be entered in favor of the defendant and
against the plaintiff who shall take nothing.  For the reasons
set forth in that same memorandum order, it is further ORDERED
and ADJUDGED that Count III of plaintiff's amended complaint be,
and it hereby is, dismissed without prejudice.

All matters in this case having been determined, it is
further ORDERED that this civil action be stricken from the
docket of this court, with each party to bear its own costs.

The Clerk is directed to forward copies of this order to all counsel of record.

DATED: November 18, 1998

JOHN T. COPENHAVER, JR.
United States District Judge

NOV 18 1998

SAMUEL L. KAY, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia
By _____ Deputy

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ENTERED

NOV 18 1998

SAMUEL L. KAY, CLERK
U. S. District & Bankruptcy Courts
Southern District of West Virginia

CALVIN T. JOHNSON,

            Plaintiff

v.                                    Civil Action No. 2:97-0895

CSX TRANSPORTATION, INC., a foreign
corporation; THOMAS PRESTON CRAWFORD,
individually; and THOMAS M. McQUAIN,
individually,

            Defendants

MEMORANDUM ORDER

        This matter is before the court on defendants Thomas

Preston Crawford and Thomas M. McQuain's motion to dismiss, filed

November 21, 1997, and defendant CSX Transportation, Inc.'s

motion to dismiss, filed November 24, 1997.

I.   Background

        Prior to the institution of the above-styled action,

plaintiff was employed by CSX Transportation, Inc. ("CSX") as a

track inspector at its St. Albans facility.  Plaintiff was

directly supervised by Thomas Preston Crawford ("Crawford"),

roadmaster at the St. Albans facility.  Thomas M. McQuain

("McQuain") was also employed at the railroad's St. Albans

facility as trainmaster.  On August 6, 1996, defendants Crawford

and McQuain accused plaintiff of working while under the
influence of alcohol and requested that plaintiff submit to a
urine alcohol test.  Plaintiff submitted to such a test,
providing two urine samples within an hour of his employer's
request.  Immediately thereafter, plaintiff was ordered off the
job.  The samples were sent to CompuChem Laboratories for testing
on August 8, 1996.

On August 9, 1996, plaintiff was charged with violating
Rule G of CSX's Operating Rules.[1]  Under Rule G, employees of CSX
have the option to enter into a "Rule G By-Pass," pursuant to
which formal disciplinary charges are held in abeyance pending
the employee's successful completion of CSX's substance abuse
treatment program.  Employees must elect to do so within five
days of receipt of their charge notice.  Otherwise, a
disciplinary hearing on the charges will be scheduled.  Having
missed the deadline for exercising his option to postpone
disciplinary proceedings until his successful completion of the
railroad's substance abuse program, plaintiff was required to

---

[1] Operating Rule G is a work rule promulgated by CSX which
prohibits employees from reporting for duty or performing service
while under the influence of drugs or other substances, including
alcohol, that might adversely affect the employee's ability to
safely perform his job and from using illegal drugs or other
substances while on or off duty.  (CSX's Memorandum of Law in
Support of Motion to Dismiss, at Exh. C).

attend a hearing with respect to the disciplinary charges brought against him on September 27, 1996.  Plaintiff requested copies of the results of his urine alcohol test in advance of the hearing, but did not receive the results prior to the hearing.[2]

Based upon the evidence presented at the hearing, including the testimony of Crawford and McQuain that plaintiff physically appeared to be under the influence of alcohol on the morning in question, plaintiff's employment with CSX was terminated.  On November 4, 1996, the Brotherhood of Maintenance of Way Employees ("BMWE"), acting on behalf of plaintiff, grieved plaintiff's termination in accordance with the terms of the collective bargaining agreement between CSX and the BMWE.  On January 2, 1997, CSX denied plaintiff's grievance and upheld its earlier decision to terminate plaintiff.  Pursuant to the provisions of the collective bargaining agreement, plaintiff

---

[2] Plaintiff contends that he repeatedly requested the results of his urine alcohol test prior to his disciplinary hearing to no avail.  Plaintiff further contends that the test was negative and that defendants were aware of this at the time of the hearing, but failed to enter the negative test results into evidence at the hearing.  The defendants argue that such test results were not withheld from plaintiff nor purposely concealed during the hearing inasmuch as the lab tested for the presence of five different drugs but failed to test for the presence of alcohol.

3

appealed his dismissal to the National Railroad Adjustment Board.[3]

Plaintiff filed an action in the Circuit Court of Kanawha County, West Virginia, on August 6, 1997, alleging six state law causes of action, including Count I wrongful discharge and Count II outrageous conduct against CSX, Crawford, and McQuain, Count III defamation against CSX, Count IV defamation against Crawford and McQuain, Count V civil conspiracy against CSX, Crawford, and McQuain, and Count VI punitive damages against CSX. Defendant CSX removed the action to this court on September 10, 1997. Defendants Crawford and McQuain subsequently consented to and joined in CSX's notice of removal. Defendant CSX filed a motion to dismiss on September 17, 1997, on the grounds that the court lacked subject matter jurisdiction over certain of plaintiff's claims and that plaintiff's civil conspiracy claim was one upon which relief could not be granted. Defendants Crawford and McQuain jointly filed a motion to dismiss on September 30, 1997, on identical grounds.[4]

---

[3] At the time the defendants filed their motions to dismiss, plaintiff's appeal to the National Railroad Adjustment Board ("NRAB") was pending. At this time, the court has no knowledge as to the outcome of plaintiff's NRAB appeal.

[4] CSX argued that plaintiff's claims for wrongful discharge, outrageous conduct, and defamation were preempted by the Federal

Plaintiff filed a motion for leave to file an amended complaint on October 6, 1997, pursuant to which plaintiff conceded that his wrongful discharge claim was preempted by the Federal Railroad Safety Act inasmuch as his claim was based on allegations that he was discharged in retaliation for making safety complaints. Further, plaintiff conceded that his civil conspiracy claim against CSX failed to state a claim upon which relief could be granted. Consequently, he proposed an amended complaint containing four counts: Count I outrageous conduct and Count II defamation against CSX, Crawford, and McQuain; Count III civil conspiracy against Crawford and McQuain; and Count IV punitive damages against CSX. Absent from the amended complaint are plaintiff's original Count I wrongful discharge claim and part of plaintiff's original Count V civil conspiracy insofar as it is now asserted only against Crawford and McQuain and not CSX.

_____

Railroad Safety Act inasmuch as these claims were based on allegations that plaintiff was discharged and otherwise discriminated against in retaliation for making safety complaints against CSX. Additionally, CSX argued that plaintiff's outrageous conduct and defamation claims constituted minor disputes so as to be preempted by the Railway Labor Act. Lastly, CSX argued that plaintiff's claim for civil conspiracy against CSX failed to state a claim upon which relief could be granted inasmuch as a corporation cannot conspire with its employees for purposes of a civil conspiracy claim. Defendants Crawford and McQuain adopted and incorporated by reference the arguments of CSX with respect to each of the claims asserted against Crawford and McQuain.

5

By order entered November 14, 1997, plaintiff's motion to amend his complaint was granted, defendants' initial motions to dismiss were denied as moot, and defendants were granted leave to file renewed motions to dismiss.  It is the renewed motions to dismiss that are the subject of this order.

In CSX's renewed motion to dismiss, filed November 24, 1997, CSX contends that the court lacks subject matter jurisdiction inasmuch as plaintiff's Count I claim for outrageous conduct and Count II claim for defamation are preempted by Section 20109 of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101, et seq.  As further grounds for its motion to dismiss, CSX contends that these claims are also preempted by the Railway Labor Act.  In defendants Crawford and McQuain's joint motion to dismiss, Crawford and McQuain also argue that Counts I and II of plaintiff's amended complaint are preempted by both FRSA and the Railway Labor Act.  Additionally, Crawford and McQuain argue that plaintiff's Count III civil conspiracy claim against the individual defendants fails to state a claim upon which relief may be granted.

## II.   Discussion

A.   <u>Preemption Under The Federal Railroad Safety Act</u>

Each of the defendants moves to dismiss Counts I and II of plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction on the ground that these claims are preempted by FRSA.  FRSA expressly prohibits railroads from terminating or in any way discriminating against railroad employees who make complaints about railroad safety issues, and provides a federal remedy to railroad employees who claim that they have been terminated or discriminated against in any way in retaliation for making safety complaints.  Specifically, FRSA provides that:

> A railroad carrier engaged in interstate
> or foreign commerce may not discharge
> or in any manner discriminate against
> any employee because the employee,
> whether acting for the employee or as
> a representative, has --
>
> (1) filed a complaint or brought or
> caused to be brought a proceeding
> related to the enforcement of this part,
> or, as applicable to railroad safety,
> chapter 51 or 57 of this title; or
>
> (2) testified in that proceeding.

49 U.S.C. § 20109(a).  FRSA goes on to provide that:

7

> A dispute, grievance, or claim arising
> under this section is subject to
> resolution under Section 3 of the
> Railway Labor Act (45 U.S.C. § 153).
> In a proceeding by the National
> Railroad Adjustment Board, a division
> of or delegate of the Board, or
> another board of adjustment established
> under Section 3 to resolve the dispute,
> grievance, or claim, the proceeding
> shall be expedited and the dispute,
> grievance, or claim shall be resolved
> not later than 180 days after it is
> filed.  If the violation is a form of
> discrimination that does not involve
> discharge, suspension, or another
> action affecting pay, and no other
> remedy is available under this sub-
> section, the Board, division, delegate,
> or other board of adjustment may award
> the employee reasonable damages,
> including punitive damages, of not
> more than $20,000.

49 U.S.C. § 20109(c).

As noted above, plaintiff's original complaint alleged

that he was wrongfully discharged in retaliation for making

safety complaints.  Specifically, Count I of plaintiff's original

complaint alleged that:

> Plaintiff's termination by CSX and the
> accusations brought by its agents,
> Crawford and McQuain, were wrongful and
> were motivated by the plaintiff's
> repeated complaints that CSX was forcing
> him to perform tasks for the company
> that substantially impaired or inter-
> fered with his ability to perform

8

> Federal Railroad Administration-mandated
> railroad track safety inspections for
> the benefit of CSX and the public at
> large.
>
> * * *
>
> CSX, acting through its agents Crawford
> and McQuain and other company officials,
> disregarded and/or concealed compelling
> evidence that the charges against the
> plaintiff were false and nevertheless
> discharged the plaintiff in retaliation
> for his safety complaints.

(Compl. ¶¶ 13, 14).  Plaintiff's original complaint also included

causes of action against all three defendants for outrageous

conduct and separate claims for defamation, one against CSX and

the other against Crawford and McQuain, individually.

Plaintiff's Count II outrageous conduct claim was based

on the following allegations:

> The actions of the defendants CSX, Crawford
> and McQuain in dismissing the plaintiff,
> bringing retaliatory charges against the
> plaintiff, and/or providing false testimony
> against the plaintiff constituted intentional,
> malicious and outrageous conduct.

In pleading his Count III defamation cause of action

against CSX, plaintiff alleged that:

> The defendant CSX, by and through its agents
> Crawford and McQuain, did defame the plaintiff
> by negligently and/or maliciously accusing him

9

of working while under the influence of
alcohol, which personal accusations the
defendant and/or its agents knew to be false,
and then knowingly, intentionally and
maliciously communicated the same to third
persons.

Plaintiff alleged the following with respect to his

Count IV defamation claim against Crawford and McQuain:

The defendants Crawford and McQuain, in
addition to defaming the plaintiff for
motivations falling within the scope of
their employment by CSX, did also make
defamatory remarks about plaintiff
motivated [by] reasons falling outside
the scope of their employment by CSX.
Specifically, the defendants Crawford
and McQuain were aware that the plaintiff
was monitoring the defendants' activities
and was aware of suspicious behavior
surrounding the diversion of company
property and materials to the defendants
for their personal benefit.  Accordingly,
the defendants . . . did defame the
plaintiff by negligently and/or
maliciously accusing him of working
while under the influence of alcohol,
which personal accusations the
defendants knew to be false, and then
knowingly and intentionally communi-
cating the same to third persons.

(Compl. ¶¶ 17, 20, 23-24).

Defendants initially filed Rule 12(b)(1) motions to

dismiss on the ground that plaintiff's wrongful discharge and

defamation claims were preempted by FRSA.  Plaintiff subsequently

10

filed a motion to amend his complaint to remove all allegations concerning retaliatory discharge, which the court granted. Plaintiff's amended complaint alleges causes of action against all three defendants for outrageous conduct, defamation, and punitive damages, and a separate cause of action against Crawford and McQuain for civil conspiracy. Absent from plaintiff's amended complaint are all allegations that the defendants' outrageous conduct or defamatory statements were motivated by plaintiff's whistleblowing. Instead, Count I of plaintiff's amended complaint now alleges that:

> The actions of the defendants . . . in bringing charges against the plaintiff that they knew to be false and in intentionally concealing evidence that would materially and significantly benefit the plaintiff in defending the charges brought against him constituted intentional, malicious and outrageous conduct.

(Amended Compl. ¶ 10). Plaintiff further alleges in Count II that:

> The defendants did defame the plaintiff by recklessly and/or maliciously accusing him of working while under the influence of alcohol, which accusations the defendants, individually or through their agents and employees, knew or should have known were false, and then knowingly, intentionally,

and maliciously communicated the same to
third persons.

(Amended Compl. ¶ 13).

Defendants contend that plaintiff is precluded from
changing the operative facts in his amended complaint to avoid
preemption of his claims.  According to defendants, plaintiff's
failure to dispute or contradict the factual allegations
contained within his original complaint necessarily suggests that
the claims set forth in his amended complaint are still based on
the underlying allegation that he was discharged, defamed,
subjected to outrageous conduct and otherwise discriminated
against in retaliation for making safety complaints.  Defendants
point to plaintiff's assertion in his memorandum in support of
his motion to amend that he "still maintains that his safety
complaints motivated the defendants to engage in their ultimate
wrongful conduct" and his concession in his responsive brief that
while he removed all such allegations from his amended complaint,
plaintiff "certainly [does] not deny or abandon the . . .
allegations against the defendants as they pertain[ ] to
defendants' retaliatory intent or other improper motives in
taking actions against him."  (Plaintiff's Memorandum of Law in
Support of Motion to Amend Complaint, at p. 4; Plaintiff's

12

Response to Defendant CSX's Motion to Dismiss, at p. 4).

In advancing their argument, defendants rely on the unpublished opinion of the United States Court of Appeals for the Fourth Circuit in Binkley v. Loughran, 940 F.2d 651, 1991 WL 135229 (4th Cir. 1991) (holding that district court must consider all of the pleadings and not just the allegations contained in an amended complaint before deciding the preemption issue).  In this circuit, reliance on unpublished opinions of this circuit is generally treated with some disfavor.  See Fourth Circuit Local Rule 36(c).[5]  In view, however, of the absence of other authority

---

[5] Rule 36(c) provides, in pertinent part, that:

> In the absence of unusual circumstances, this Court will not cite an unpublished disposition of any of its published opinions or unpublished dispositions. Citation of this Court's unpublished dispositions in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.

> If counsel believes, nevertheless, that an unpublished disposition of any court has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such disposition may be cited if counsel serves a copy thereof on all parties in the case and on the Court.

13

of this circuit with respect to the preemption issue dealt with
in Binkley, the court finds that the circumstances are
sufficiently unusual as to merit consideration of Binkley as
having precedential value, particularly inasmuch as there is no
published opinion that would serve as well.

The court finds the reasoning employed in Binkley to be
persuasive.  Without explicitly so stating, Binkley appears to
have applied the "artful pleading" exception to the well-pleaded
complaint rule and looked behind the plaintiff's complaint to
determine whether her claims were preempted by federal law.

In order to determine whether an action arises under
federal law, a court must typically apply the well-pleaded
complaint rule.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392
(1987).  This rule "provides that federal jurisdiction exists
only when a federal question is presented on the face of
plaintiff's properly pleaded complaint."  Id.  Because "[t]he
well-pleaded complaint rule applies to the original jurisdiction
of the district courts as well as to their removal jurisdiction,"
Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust
for S. Cal., 463 U.S. 1, 10 n. 9 (1983), a plaintiff "may avoid
federal jurisdiction by exclusive reliance on state law" in
pleading his case.  Caterpillar Inc., 482 U.S. at 392.

14

Generally, federal preemption is a defense to a plaintiff's action, and as such, "it does not appear on the face of a well-pleaded complaint." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). Consequently, the preemption defense "does not authorize removal to federal court." Id. In certain circumstances, however, "the preemptive force of [federal law] is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Caterpillar Inc., 482 U.S. at 393 (quoting Metropolitan Life, 481 U.S. at 65). This so-called complete preemption occurs when "an area of state law has been [so] completely preempted, [that] any claim purportedly based on the preempted state law is considered . . . a federal claim." Id. at n. 4. When state law claims are completely preempted by federal law, the plaintiff's complaint arises under federal law and removal is proper. See Metropolitan Life, 481 U.S. at 67.

The "artful pleading" doctrine has developed, however, as an exception to the rule limiting the court's examination to the face of the complaint when it appears the plaintiff seeks to conceal the federal nature of his claim. See Scott v. Greiner, 858 F. Supp. 607 (S.D. W. Va. 1994); State of Maryland v. Phillip

15

Morris, Inc., 934 F. Supp. 173 (D. Md. 1996).  In determining whether a complaint is artfully pleaded, the court "may look behind it, or 'peek,' to ascertain facts that would appear in a well-pleaded complaint."  J.H.W., Sr., Inc. v. Exxon Co., 921 F. Supp. 1436, 1441 (D. Md. 1996).  "Application of the artful pleading doctrine is most appropriate in cases where federal law altogether preempts and supplants state law, but plaintiff seeks to avoid the effect of preemption by pleading only state causes of action."  Id.

"[W]hether a state cause of action is completely preempted in a particular case is a question of congressional intent."  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985).  In this case, "congressional intent . . . is clear," inasmuch as FRSA "includes an explicit preemption provision . . . ."  Rayner v. Smirl, 873 F.2d 60, 65, cert. denied, 493 U.S. 876 (1989).  Consequently, the federal remedy provided by FRSA completely preempts and supplants a rail worker's state law wrongful discharge claim.  Id.

Here, plaintiff abandoned his state law wrongful discharge claim and removed all allegations in his amended complaint that other adverse employment actions taken against him were motivated by defendants' desire to retaliate against him for

16

making safety complaints.  Plaintiff now contends that his amended claims for outrageous conduct and defamation are not preempted by FRSA inasmuch as they are no longer based on his retaliatory allegations.  Defendants argue otherwise, relying on plaintiff's assertions and concessions in his supporting briefs filed with the court that defendants' wrongful conduct was motivated by a desire to retaliate against plaintiff for making safety complaints.

While the "artful pleading" exception is clearly recognized in this circuit, it nevertheless must be sparingly applied.  J.H.W., Sr., Inc., 921 F. Supp. at 1441.  As noted above, however, the application of this exception is most appropriate in cases like this one, where a plaintiff attempts to avoid preemption by removing from his complaint allegations which otherwise invoke preemption.  The court finds it appropriate, therefore, to look behind the face of plaintiff's amended complaint and to consider all of the plaintiff's pleadings before the court in deciding the preemption issue.  In doing so, the court finds that plaintiff's Count I claim for outrageous conduct, Count II claim for defamation, and Count IV claim for punitive damages are each based upon his contention that he was discriminated against by defendants in retaliation for making

17

safety complaints.  Each claim was originally pled in plaintiff's complaint as having been the direct consequence of plaintiff's safety complaints and plaintiff has continued to assert in his supporting briefs filed with the court that his safety complaints motivated the defendants to engage in wrongful conduct towards plaintiff.

Having found that plaintiff's Count I claim for outrageous conduct, Count II claim for defamation, and Count IV claim for punitive damages are based upon allegations of retaliation by defendants, the court concludes that each of these claims is completely preempted by FRSA inasmuch as FRSA provides railroad employees who are "harassed, discriminated against, or discharged by their employers for reporting safety violations" with an exclusive remedy against their employers.[6]  Rayner, 873 F.2d at 64 (citing H.R. Rep. No. 96-1025, 96th Cong., 2d Sess., reprinted in 1980 U.S. Code Cong. & Admin. News 3830, 3840). While defendants do not explicitly suggest that plaintiff's punitive damages claim is also preempted by FRSA, the court finds this to be the case inasmuch as FRSA provides plaintiff with the

_____

[6] Having found that plaintiff's claims for outrageous conduct and defamation are completely preempted by FRSA, the court need not address the defendants' contention that these claims are also preempted by the Railway Labor Act.

right to collect reasonable damages, including punitive damages,

for adverse employment actions falling short of discharge or

suspension.  See 49 U.S.C. § 20109(c).

B.    Civil Conspiracy

In addition to his claims for outrageous conduct,

defamation, and punitive damages, plaintiff alleges a cause of

action against defendants Crawford and McQuain for civil

conspiracy.  Specifically, Count III of plaintiff's amended

complaint alleges that:

> Prior to CSX's termination of the plaintiff,
> the defendants Crawford, McQuain and other
> unknown persons did intentionally combine,
> conspire and act with express or tacit
> agreement to commit wrongful acts against
> the plaintiff, including but not limited to
> the levying and maintenance of charges
> against plaintiff that he was under the
> influence of alcohol while on the job,
> which accusations the defendants knew to
> be false.

(Amended Compl. ¶ 16).

Defendants Crawford and McQuain have moved the court

for dismissal of plaintiff's civil conspiracy claim pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing

that plaintiff has failed to allege facts sufficient to support his civil conspiracy claim.

Under the "notice pleading" scheme of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a claim is sufficient if it contains "a 'short and plain statement of the claim' which gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). In deciding whether to dismiss a claim pursuant to Rule 12(b)(6), the court must read the complaint liberally in favor of plaintiff. Id. at 45-46. A claim is sufficient so long as plaintiff has "colorably stat[ed] facts which, if proven, would entitle him to relief." Adams v. Bain, 697 F.2d 1213, 1216 (4th Cir. 1982).

It is well settled that civil conspiracy requires concerted action by two or more persons or entities. Cook v. Heck's, Inc., 342 S.E.2d 453, 460 (W. Va. 1986); Dixon v. American Indus. Leasing Co., 253 S.E.2d 150, 152 (W. Va. 1979). Inasmuch as a corporation can act only through its agents or employees, an agent acting on behalf of his corporation cannot be said to have conspired with the corporation in achieving an illegal objective since in essence the corporation would be conspiring with itself. See, e.g., Bellamy v. Mason's Stores,

20

Inc., 508 F.2d 504 (4th Cir. 1974); Greenville Publishing Co.,
Inc. v. Dailey Reflector, Inc., 496 F.2d 391 (4th Cir. 1974).  In
order to be personally liable for civil conspiracy, an agent,
employee or officer of a corporation must have "an independent
personal stake in achieving the corporation's illegal objective."
Greenville, 496 F.2d at 399.

        Here, in order for plaintiff to state a claim for civil
conspiracy against the individual defendants, plaintiff must
allege that Crawford and McQuain each had an independent personal
stake in subjecting plaintiff to outrageous conduct and
defamatory statements.  In his original complaint, plaintiff
alleged that Crawford and McQuain's defamatory remarks were made
both within and without the scope of their employment.  Absent
from plaintiff's amended complaint, however, are all allegations
that the individual defendants made allegedly false accusations
against plaintiff outside the scope of their employment.
Plaintiff concedes as much in his responsive brief to the motion
to dismiss filed by defendants Crawford and McQuain, but does set
forth in a brief that he plans to pursue his civil conspiracy
claim against them on the theory that they conspired against him
in their individual capacities for purposes personal to them.
(Plaintiff's Response to Defendants Crawford and McQuain's Motion

21

to Dismiss, at p. 2).  He fails, however, to include within the amended complaint or even his brief any factual assertion concerning what personal stake, if any, defendants Crawford and McQuain had in subjecting plaintiff to the alleged wrongful conduct.

While the court has elected to employ the "artful pleading" doctrine to look behind the amended complaint with respect to plaintiff's Count I outrageous conduct claim and Count II defamation claim, the court finds that it would be inappropriate to apply this doctrine to determine whether plaintiff has alleged facts sufficient to support his Count III civil conspiracy claim against Crawford and McQuain.  As noted previously, the "artful pleading" doctrine must be sparingly applied and is typically reserved for those situations, unlike Count III, where preemption is at issue.  Inasmuch as plaintiff's amended complaint fails to allege that the individual defendants conspired outside the scope of their employment for purposes personal to them, plaintiff's Count III claim does not make out a cause of action for civil conspiracy under West Virginia law.

### III.   Conclusion

For the reasons stated above, it is ORDERED that:

1.   Defendant CSX's motion to dismiss be, and it hereby is, granted.

2.   Defendants Crawford and McQuain's motion to dismiss be, and it hereby is, granted.

3.   Counts I, II, and IV of plaintiff's amended complaint be, and they hereby are, dismissed with prejudice.

4.   Count III of plaintiff's amended complaint be, and it hereby is, dismissed without prejudice.

The Clerk is directed to forward copies of this order to all counsel of record.

DATED:  November 18, 1998

JOHN T. COPENHAVER, JR.
United States District Judge

SAMUEL L. KAY, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia
By _____ Deputy

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

STEVEN J. MOSES

       Plaintiff,

v.                                      CIVIL ACTION NO._____

NORFOLK SOUTHERN RAILWAY COMPANY,

       Defendant.

### CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served the foregoing *"Defendant, Norfolk Southern Railway Company's Notice of Removal"* by mailing a true copy thereof, postage prepaid, by U.S. regular mail on the 3rd day of May, 2006 to:

Rudolph L. DiTrapano, Esquire
Joshua I. Barrett, Esquire
Sean P. McGinley, Esquire
Heather M. Langeland, Esquire
DITRAPANO, BARRETT & DIPIERO, PLLC
604 Virginia Street, East
Charleston, WV 25301

Alva A. Hollon, Jr., Esquire
John O. Hollon, Esquire
SAMS & HOLLON, P.A.
9424 Baymeadows Road, Suite 160
Jacksonville, FL 32256